A92A0672. SHEARSON AMERICAN EXPRESS v. LEWIS et al.
(420 SE2d 57)

BEASLEY, Judge.

Defendant Shearson American Express d/b/a Robinson-Humphrey appeals from a judgment of the trial court granting plaintiffs' "motion for judgment upon arbitration award," and awarding judgment for $27,895.67 plus interest and court costs, to be set off by a sum previously paid to plaintiffs, as explained below.

The complex procedural history of this case is as follows. In 1980, plaintiffs (husband and wife) opened an account and signed a customer agreement form with defendant securities dealer for the purpose of investing certain funds they had received as proceeds from a personal injury lawsuit. In 1981, plaintiffs authorized defendant to purchase on their behalf $20,000 worth of shares in a gas and oil lease partnership known as Petro-Lewis 81-5. In 1984, the limited partnership became financially insolvent and plaintiffs lost their entire $20,000 investment. In 1986, they filed the present complaint in superior court, seeking $20,000 for breach of contract and damages under OCGA § 13-6-11. The complaint alleged plaintiffs were unsophisticated investors with limited education, that their goals were to keep their money in safe, nonspeculative investments, and that defendant "convinced" them to transfer funds into Petro-Lewis 81-5, representing the investment to be safe and secure, "with little, if any risk," when it knew that it was in serious financial difficulty.

In July 1988, a "stipulation and consent order" was entered in the action, expressing the parties' "desire to arbitrate." It was stipulated that plaintiffs would submit their claims for arbitration to the Board of Arbitration of the National Association of Securities Dealers (NASD), pursuant to an arbitration provision of their 1979 customer agreement, and that the state court litigation would be stayed pending the outcome of those proceedings.

Meanwhile, in January 1985, a putative class action suit was brought in federal court on behalf of investors who had purchased interests in the Petro-Lewis limited partnership, alleging violations of the Securities Exchange Act of 1934, the Securities Act of 1933, negligence and breach of contract.

In September 1988, the federal court certified a class of plaintiffs but specifically excluded from the class those individuals who had signed customer agreements containing arbitration clauses. Following discussions in late 1989 regarding a global settlement of the federal class actions, an agreement was reached providing for the settlement

of all claims of all individuals who had purchased interests in the Petro-Lewis partnerships, *including those who had signed arbitration agreements.* Pursuant thereto, the federal court certified a new class of plaintiffs which included those who had signed arbitration agreements.

On April 4, 1990, a notice was sent to all potential class members, including plaintiffs, advising that if settlement was approved by the federal court, judgment would be entered dismissing the suits with prejudice and all class members who had not requested exclusion from the class would be deemed to have released the broker-dealer defendants and Petro-Lewis from any claim arising from the litigation "in any other court or forum whatsoever." It further provided that "those individuals who had signed agreements . . . which contained arbitration provisions are considered class members for the purpose of this settlement. . . . [and] unless you elect to exclude yourself from the class, you will have waived any right to arbitrate your claims. . . . Only members of the class who have *not* requested exclusion therefrom will be entitled to receive any proceeds of the proposed settlement. If you are a member of the class described above and wish to remain a class member, you need *not* respond to this notice. You will be treated as one of the class members in these actions and will be entitled to share in the proposed settlement. If you do not wish to be bound by the proposed settlement, you must request to be excluded from the class. . . . The request must be in writing. . . . [Those requesting exclusion] will *not* receive a check representing your share of the net settlement fund." By order dated May 23, 1990, the federal court approved the settlement, specifically providing that all class members who had not requested exclusion are "permanently barred and enjoined from asserting any of the released claims in any court or forum whatsoever."

Plaintiffs initiated arbitration proceedings in August 1990, and on March 12, 1991, a hearing was held before the NASD arbitrator. Defendant claims that it proceeded to arbitration based on representations by plaintiffs that they had opted out of the federal class action to pursue their private cause of action. However, prior to the commencement of the NASD hearing, counsel for defendant moved to dismiss the arbitration based on newly acquired information that plaintiffs had received and negotiated a settlement check from the Petro-Lewis class action (in the amount of $784.34). In denying the motion to dismiss, the arbitrator acknowledged defendant had "proved that the Lewises had received and cashed the check," but he stated further: "I'm still not convinced that they understood exactly what the check was and that they understood the ramifications of their action." The arbitrator awarded plaintiffs $28,680.01, including attorney fees.

Plaintiffs moved the superior court to affirm the arbitration award, and defendant filed an opposite motion to vacate the award on the basis that as members of the class action plaintiffs were barred by the federal judgment from pursuing their claims in the arbitration proceeding. Defendant simultaneously moved the district court for an order to enforce its judgment in the event the arbitration award was confirmed by the superior court.

Two conflicting orders followed. On July 2, 1991, the superior court entered judgment affirming the arbitration award with direction that it be set-off by the $784.34 "erroneously" paid to plaintiffs in settlement of the class action suit, on the basis that the agreement to arbitrate and the litigation pending before it estopped defendant from asserting any claim or defense under the class action. It further determined that defendant's "class action defense" was frivolous and without substantial justification so as to authorize an award of attorney fees pursuant to OCGA § 9-15-14 upon subsequent proof of costs incurred.

On August 8, 1991, the federal court entered an order granting defendant's motion to enforce the federal settlement, enjoining plaintiffs from "attempt[ing] to enforce the arbitration award which was confirmed by the Superior Court of Fulton County." An appeal of that order is presently pending before the United States Court of Appeals for the Eleventh Circuit.

The first question is whether the Lewises are bound by the class action: That issue is within the jurisdiction of the federal court and pends imminent decision by the federal court of appeals. If they are parties to the federal class action, then the issue is whether the Lewises can still enforce the arbitration provision of their customer agreement.

If we were to affirm the superior court's judgment affirming the arbitration award and additionally awarding attorney fees, and the federal court of appeals were to later affirm the injunction against enforcement of the arbitration award, an intolerable inconsistency would result in which the Lewises would be subject to federal contempt for enforcing a valid state judgment. If, on the other hand, we were to reverse the superior court's judgment on the basis that we agreed that the Lewises were bound by the class action, and subsequently the federal appellate court were to reverse and cause the injunction to be vacated or dissolved, then the Lewises would be left with no remedy or mechanism for resolving their dispute with the securities dealer.

Consequently, since the first and controlling question will be resolved in the federal appeal, this appeal is dismissed and the case is remanded to the superior court with direction to vacate its judgment until the time of a final decision in the federal litigation. Then it may

reenter its judgment and the opportunity for a timely appeal from it will be presented. See *Bergen v. Martindale-Hubbell,* 245 Ga. 742 (267 SE2d 10) (1980).

*Appeal dismissed with direction. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JUNE 8, 1992.

*Peterson, Dillard, Young, Self & Asselin, David C. Jensen, Lynda G. Wilson, Andrea C. Jones,* for appellant.
*Jerry B. Hatcher,* for appellees.

